Good morning. My name is Brian Warwick on behalf of the Plaintiff's Counsel. May it payments that Rushmore sends to its discharge debtors. Number one, do not request only the payment of a periodic payment, but they also do not offer to accept that payment in lieu of foreclosure. Those two things are required by the limited bankruptcy rule, with the exception to the discharge injunction by 524. As a result, these monthly mortgage statements simply do not qualify under 524J. And because they do not qualify under 524J under any circumstances, the trial court erred in using that as the basis for denying Yes, we were seeking money from discharge debtors, but we're allowed to seek money from discharge debtors under 524J. The same argument they made to the trial court. And they point to specific language. The class that you're seeking to certify, does it include borrowers who are Chapter 7 debtors who have not yet surrendered possession of the property, foreclosed on or vacated the property? Yes or no? Yes, Your Honor. If I may answer further, though, it doesn't matter if 524J Section 3 is not met. That is the first requirement of 524, that they be in possession of the home. The second is... But Rushmore will forego foreclosure for those who make payments, right? So they're different. They're different. That's a different class of people, right? But you have to look at... They're not different in this case because they don't offer that. What they offer is, if you look at the language that they quote to from their mortgage statement, it doesn't say if you make a monthly payment, we will forego foreclosure. If they did, it would be a different case. That's what they argue. But if you look at the language that they point to on page 14 and 15 of the brief, the language says specifically, failure to bring your loan current may result in fees and foreclosure, the loss of your home. As of this date, you are ex-des delinquent on your mortgage. So they're not merely saying if you make a $995 periodic payment, then we will forego foreclosure. If it did, that's what the rule is intended to do, is to say, look, you have the right to foreclose, but we have the right to foreclose. I tell you what, if you would like to remain in your home, we'll let you make a periodic payment and stay in the home. That's what the rule is designed to do. But that's not what these documents say. Remember, these are the same exactly monthly mortgage statements they send to everybody prior to bankruptcy. The same one, if you're not in default at all, you get the exact same mortgage statement. And this statement says... Well, and that's the confusing part, because they send that same document before anybody's in bankruptcy. I understand, but they say if. So, I mean, it could go to everyone, right? Because it says, if you're in bankruptcy, for informational purposes. Right. And that's the issue that the trial court here has said, I'm going to decide. He's already denied their motion for summary judgment on that. He found there was enough evidence to go further and deny motion to dismiss and motion for summary judgment on that point and said there's enough for a jury to decide whether it's deceptive when you look at it as a whole. Wilson's question, because I'm sorry I didn't understand your answer. So, it says in 524J that it has to be their principal residence. Explain to me why you say that doesn't matter for the class? So, it would matter if the other two requirements, there are three requirements of 524J. Number one, the creditor retains a security interest in real property and it's their residence. That's where this comes in. But your representative isn't representative of the class then. But because the documents don't satisfy all three requirements, that point is irrelevant. To satisfy 524J, you have to live in the house and the offer has to say, section three, you have the act, the act of trying to get money from them, must, it says not only it's a requirement, it says the act is limited to seeking and obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem. Where does it say that they have to, I mean I'm not sure. It says it's for informational purposes, so why doesn't it comply with that? But you can't ask for money and then say at the same time it's for informational purposes. So that's what they're trying to do. They are confused as to their own purpose. In their first argument, it says, yes, we are seeking money under 524J, which we're allowed to do. It says, you know, if you, you're prohibited, the general injunction of 524 says, look, if there's been a discharge, you must stop. You must stop trying to get money from these people. And then there's a very limited exception. So the safe harbor exception applies when all three of those requirements are made and you're saying the third, no one meets this third element. That's right. And because the third one is never met under any circumstances, then the document itself cannot comply with 524J. And because 524J fully cannot be complied with, then element number one is really irrelevant because they don't meet element number three. If they did meet element number three, then your point that yes, they need to reside in the home or not reside in the home would be an issue of individual fact. But because they cannot satisfy the third requirement and all three must in fact be satisfied, that 524J has simply no application to these particular mortgage statements. And so if that's the case, that was the basis for the trial court's denial of certification. He's already determined that it's up to a jury whether or not. Why isn't the district judge right that these people could be all different? Your person doesn't live in the residence. So that to me seems problematic. I understand your argument. But then there's some of them could have reached out and contacted Rushmore and then Rushmore could have sent the statements. I mean, these are all encompassed within the class. And so they have different issues with this. So just as this court's decision in Hellman looked at the document itself, that's what the issue is. This is an FDCPA, FCCPA case regarding whether the documents seek money. Anyone can't just sue. I mean the plaintiffs have to matter. That's the whole point of a class is that they have common issues and those issues predominate. I completely agree. And so if someone called and got asked for a statement, are you saying they still violate the act by sending this to them? If they call and ask for a statement, they should send a different statement. They should send a statement like the statement in Hellman. That's clearly sent. How do you know what their communication was? What if their communication is, look, I want to stay on my property. Can you send me a statement that I can pay if I want to stay on my property? Your Honor, there's no evidence in the record of that. It's mentioned that there could be people like that. And if there are people like that, then their documents will show it and they could be excluded from the class. There has been no evidence presented other than theoretically. Hold on, hold on. You're seeking class certification, so the burden's on you. So you have to show that the class is that narrow. But only if it's relevant and those people actually exist. So I come in and I say, you're right. I expect everybody who's received a discharge should no longer receive regular monthly statements. That is our position because the regular monthly statements say you have to pay this entire amount. And they're confusing in that, for example, my clients, it was two and a half years after they abandoned the property that they start receiving these monthly statements. Doesn't what the statement says or what the statement is allowed to say, doesn't it differ for those who vacated their homes versus those who didn't? Not at all. And that's part of the problem. Those are the exact same statements they received before they filed bankruptcy. This is the exact same statements that everybody who has a mortgage received. You don't change it other than mortgage statement two. That is different. The district court said that there were different legal issues that had to be answered for people who vacated and people who didn't. Explain to me why that's not correct. And what happened was the trial court got hung up on that first factor of 524J because it says, number one under 524J says the bank has to have a security interest in real property. That is the principal residence of the debtor. And so the judge was looking at that one factor. But he got hung up on that one and it was easy for the named plaintiffs because they had already abandoned. But the issue is if the documents themselves do not meet all three of those factors of 524J and because it cannot comply with number three, that first factor is really not relevant. So the point is, you know, the 524 says you must stop trying to collect money from these individuals. And there's only a very, very limited exception when you can go forward. And that very limited exception was not met here. What Congress intended to do here was to say, look, we have the right to foreclose against you, but I tell you what, let's make a new deal. If you agree to pay us $1,000, we'll let you stay in the home. Do you want to make that deal? And it should be clear. But that's not what they did here. They said the same thing in the mortgage statement says, if you fail to bring your mortgage current, then you may get foreclosed on. Well, bringing their mortgage current was $70,000. That's what they asked them to pay, $70,000. That's not a periodic payment. Can your client not meet typicality, or you're saying they can just because element one doesn't matter? Right. By the fact that 524J does not apply to anyone, that removes that individual factor. If it complied with element three, then I agree it would be an individual issue that had to be addressed. Thank you, Ron. All right. Mr. Lynch. Yes. May it please the court. My name is John Lynch, and I'm representing the appellee Rushmore. The issue before the court is whether the district court abused its discretion in denying class certification. We submit to the court that the district court did not abuse its discretion. 524J doesn't apply to anyone, does it? That is, 524J does apply. Let me talk about that. First of all, you do have issues. One is the principal residence issue, which is individualized. It was individualized with Ms. Sellers. Second is whether there's a lien. Talk to me about this third element. The third element, Judge, the language in the statement satisfies the third element. Failure to bring your loan current may result in fees and foreclosure. There's not one case, there's not any authority that says what a periodic payment is. What a periodic payment to the Sellers is a different type of payment that may be required of the Smiths. Remind me what the district court said about that third element. The district court did not address the third element. The district court, and what I would submit to this court is . . . That's the problem that you have. Was this argument in front of the district court? The 524J exception generally was in front of, but not the specific argument. Let me tell you why I don't . . . Can you back up on that? Did they make this argument about number three to the district court, that if any one of these was not met, they'd fail for all? Yes, that argument was made. It just was not addressed in the class certification order by the court. The court said since it was a principal residence, the exception didn't apply, and the court didn't need to go any farther on whether this exception applied or not. And do you agree with your friend on the other side that if you don't meet three, you lose? I believe three would be a fact issue that would be individualized to each borrower. And I believe three is important because it does have to . . . You have to seek payment. These statements went to everyone, as I said. The statement goes to someone and says, if you don't want foreclosure, and that's with this exception, you've got to have a lien on your property, principal residence, and you've got to make this payment. And that's what's happened here. And if you want to keep your home, you've got to make that payment. And this exception was placed to forge a relationship between a loan servicer and the borrower if it was their principal residence and there was still a lien. The reason the theories are different and the reason I think the court, first of all, is that a threshold issue said whether this exception applies is factual because of those three elements. The court did focus on principal residence. But it doesn't apply to the sellers. So the sellers, the issue the sellers are going to be trying as a class rep is going to be saying, was this an attempt to collect a debt? Because the exception doesn't apply. But we know the exception applies to others in the class. It didn't address typicality, did it? You're right, Judge. The court limited its analysis to predominance. And the predominance issues were this exception issue and another issue I would like to talk about. Wait, can we affirm if we agree with you on typicality but not predominance? Yes, yes. This was in front of the court. This was in front of the court, yes. We addressed typicality. We addressed whether it was an adequate class rep. We addressed ascertainability. I would like, unless the court has any more issues with the 524J, I do. I'm not sure. May I ask one more? I'm not sure that I understood your periodic payment argument. Can you explain that? Like why? What they're saying is, Judge, just look at the notice, look at the statute. Notice doesn't mean statute. They lose. Why aren't they right? Because if you look at the statement, I mean, if you look at the statute, it just requires communications in a monthly statement. It says, in the ordinary course of business. In the ordinary course of business, this was the statement that was asking for periodic payments. And periodic payments means whatever it takes to stop foreclosure. Well, but their beef is that it doesn't say that. In other words, why shouldn't it have to say, look, we're seeking this payment of $500 in lieu of foreclosure? Well, my reading of what's in this notice does say you have to make a periodic payment. It says you have to bring your loan current or there will be a foreclosure. I understand it's a periodic payment. Where does it say in lieu of foreclosure? It says failure to bring loan current may result in foreclosure. Isn't that the same thing that if you don't make your payment, you're going to be foreclosed on? So explain to me, if I'm nine payments behind in this situation and you send me one of these, my understanding was if I make one payment, if I start paying every month but I miss the nine, you're not going to foreclose. Are you saying if you don't get current, we're going to foreclose no matter what? The language in the statement requires the loan to be current, and that's going to differ. Some people are only going to be one or two payments behind. Some people are going to be 70,000 behind, and that's going to be individualized. The statute doesn't protect you from that. The way I read it is such an act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of in rem. So the ability to seek payment at all. Once you seek payment number one, you have to agree not to foreclose if they keep paying, even if they're in arrears. And you're saying you read the statute differently. I do read the statute differently. I would like to turn to the other ruling by the court about the least sophisticated consumer, which I think raises some of the points you raised, Judge. So the least sophisticated consumer, there's been the Hellman decision. There was the recent decision by this court in November, the late versus, which we weren't able to put in our brief, the late versus the medical device case. And the least sophisticated consumer, you have to take into account, while it's an objective test, you have to take into account the plaintiff's account history and the plaintiff's circumstances. So in this case, when you're applying, even if they're right on the exception, you have the individualized issues predominate over the common issues. Because just like the example, if you get this statement and, let's say, the borrower calls and says, I want to stay in the property. Please send me statements. Or after a surrender, they try to cut some deal, whether it be a deed in lieu or eight months more until there's a foreclosure. So when you have the least sophisticated consumer, and again, the Hellman case says that and the late case says it, it is an objective test, but it doesn't, and the late court said that in their opinion, the least sophisticated consumer. I'm not sure the Hellman case helps you, Counsel, even though it's an unpublished opinion. But there's a lot of authority out there that says that in order to determine whether or not the predominance requirement of Rule 32 is met, you can do that by showing that all of the class members' claims were derived from the same common document. And so it seems like what the sellers have done here is they're limiting the class to everybody who got these two mortgage statements, period. Correct, Judge, but the class is so broad that if someone reaffirmed or if they surrendered or if they called in, you have to take into account the plaintiff's circumstances for that objective test. Broad mortgage statements like this have been upheld as sufficient to satisfy the predominance requirement. But, Judge, that's in cases where the circumstances of the borrower aren't relevant. It could be a fee situation or if someone's just a debtor. When you're dealing with post-discharge situations with people and their mortgages in their house, the situation and the facts they received the statement in, Hellman says it and so does the late decision. The least sophisticated consumer can't be, that test can't be done in a vacuum. You have to consider the seller's mindset and what's happened in the seller's account. Partially objective and partially subjective. Correct, and that's exactly what the 11th Circuit has said and other circuits have said even though they apply the unsophisticated test. What the least sophisticated consumer tests, the objective part of it, it doesn't matter what the sellers say. If the sellers say, like in this case, they weren't deceived by the statement, they still have a case because it's the objective test. But the subjective component is what happened in the seller's situation and what would happen in the Smith situation. Judge, you would have a class rep like, let's say, the Smiths or someone in the class that asked for their statement or had been communicating with Rushmore. That person in that situation with those statements, that account history has to be taken into account. And the court said in this type of case, and I agree with you, Judge, there are certain types of cases that the least sophisticated consumer is done entirely objective because everyone's just a debtor. It's an error in a statement. It could be language that's required by statute. It could be a late fee that's too high, and that error applies equally to everyone. But in this case, and we've had an affidavit from our client that said the individualized circumstances in Florida after people filed bankruptcy and they surrendered their property, there were lawsuits, there were counterclaims, there were people wanting to stay in their property, there were deals cut everywhere. So the recipient of that statement to evaluate the least sophisticated consumer, you would have to look in the shoes of the seller. The words in the shoes and you don't evaluate the least sophisticated consumer in a vacuum is in the Eleventh Circuit cases, and it's in cases all over the country. So this type of FDCPA case, this type of Florida Consumer Act case, the least sophisticated consumer has too many individualized issues, and those individualized issues predominate because the recipient of this statement doesn't apply equally to people. Just like, Judge, you said as far as phone calls, and you have to look at the history of the account and what happened post-discharge. Also, was there a relief from the state during the bankruptcy? Was the lien already avoided? Did they reaffirm? Did they surrender? Did they move? Did they send some payments in? This post-discharge world, this isn't an error that you just look at the statement and say that's an error. So you apply the least sophisticated consumer and they're deceived and they're misled. Unless you know the circumstances of the sellers or the other class members, no one can look at this statement and say, I can't tell. You have to look at the actual borrower in conjunction with that objective test. And we believe this is the type of case that is the least sophisticated consumer requires the plaintiff's account history, and that just predominates. The court did rule that. So this court can affirm based on that, even if the court doesn't think the discharge exception applies. And going back to the discharge exception, the discharge exception, though, I think still would apply. Just like the court said, it would apply to people in the class. And I understand the argument about the periodic payments, but the information in the statements would be different because you have an individual that meets the discharge exception with a lien on their property and the principal residence, and let's say they just had one payment that was owed. And if they had to make one payment to stay in the residence, that statement, the financial information in that statement, is different for every borrower. It's that language about failure to bring the loan current or you'll result in a foreclosure. We have not seen any case law or anything interpreting this discharge exception that said you had to have any magical or special language for it to apply. It was supposed to, and the intent of it was when someone files bankruptcy, you say reaffirm, redeem, or surrender, and then if someone's in the principal residence, it was supposed to generate discussions. And you were allowed to seek payment, and it does say periodic payments, or you can enforce the security interest. There's other points that we raised that the court didn't address. The court only addressed predominance. We don't believe the sellers are an adequate class rep at all because of the discharge exception and their unique circumstances. They went in depth in this case to talk about the seller's individual fact circumstances in application of the least sophisticated consumer standard. Why would they need to do that? If this was a true letter case where individualized circumstances did not have to be considered as part of the objective test, why not just put the statement, attach it to summary judgment and say, here it is, look at the statement, judge. I mean, the facts of the sellers have to be read and they have to be considered when you're doing that objective test. The sellers and the way they litigated the case because they needed to, and they know this, the facts of the seller's case are relevant. So in this type of case, the least sophisticated consumer, the individual circumstances of the borrowers are relevant. Other cases, judge, like you mentioned, Judge Wilson, where predominance is met just by an error in a statement, the facts of the plaintiff aren't even relevant. You don't even need any of the facts of the plaintiff. You just move for summary judgment and say, this statement's confusing to the least sophisticated consumer and the facts of the sellers don't have any relevance whatsoever. We also opposed the class on ascertainability grounds and the court didn't rule on that. And this court wouldn't be, I mean, there was no evidence of ascertainability. We had evidence from Rushmore that they don't have the computer coding sections to talk about whether the property was even surrendered or reaffirmed. Clearly, that's an issue here. Reaffirmed is in the class definition. If someone reaffirmed the debt during the bankruptcy, they wouldn't be part of the class, and this class can't even be ascertained. The court, and you could tell from the record in this case, four attempts to change the class definition, and when they moved again after they had their second chance, they gave the broadest definition possible. And there's just, that class is not ascertainable, and they don't have any evidence, and they do have the burden to say the class is ascertainable, and they don't have any. All right. Mr. Lynch, we have your argument. Thank you. Thank you, Judge. Mr. Warrick. May it please the court. Once you receive a discharge in bankruptcy, circumstances change dramatically. 524A puts an injunction in place, an affirmative injunction against the debt collector. It says if your debt has been discharged, you need to stop. You need to stop collecting from these individuals because that's the fresh start. That's the whole purpose of bankruptcy. There's a super limited exception under 524J that was only created within the last six years, I believe. 524J was passed, and it was specifically passed. So if you start with 524J, it says this discharge operates as an injunction. Is there anyone in the class where Rushmore actually sought foreclosure while they were making payments? I'm not sure, but they proceed to send these documents while they're going through with foreclosure. That's correct. Because they believe, they interpret it as, 524J gives us the right to just keep sending payments. We don't have to do anything special because we have carte blanche, the ability to just continue to send regular monthly statements. Whether you're in bankruptcy or not. They have to do anything special. The discharge. So everybody in the class receives a discharge. So 524A says you must stop right now. As soon as the discharge comes, you've got to stop sending payments. You can't ask for money anymore from these individuals. So it's different from the case where the company said, we just send them for informational purposes. Here, they're admitting, we're seeking money. And so if you're going to seek money from somebody who has already had their debt discharged, you have a very limited window of how you can do that. And it specifically says, if the person's still living in the home and you have a security interest, and it's in your regular course of your business, that means debt collectors who don't renegotiate and take additional payments can't do it, then such act, meaning the act of collecting money, is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of NREM relief. So what does that mean? Well, it makes perfect sense. So Congress had all these people going bankrupt because they're downturned. If they've never sought foreclosure and all they're doing is seeking periodic payments, and this says it's for informational purposes only, I'm at a loss as to how they've violated this. It's because everybody already got a discharge. So the class definition is everybody who received this payment after they received the discharge. Received the notice. Received this notice after discharge. That's fine. They send it to everyone, including the people who got a discharge. Right. And it says, if you got a discharge, it's for informational purposes only. And they say, if you got a discharge, we are seeking payment. That's what Mr. Lynch, my friend, just argued. He admitted, yes, we're seeking money from these people. We're allowed to do that. That's the difference. They are, but they don't foreclose. Right. They say, if they offered a periodic payment. If you can look at this document and figure out what the periodic payment was. I'm sorry, I'm asking a really bad question, but where does it say in this statute that they have to give notice versus they can't foreclose? It says in lieu of foreclosure. Where does it say that they have to tell you in lieu of foreclosure? They say it's for informational purposes. They seek payment. And you have no evidence they've ever foreclosed on anyone that's paid a periodic payment, correct? Yes or no? It depends on what you're calling a periodic payment. What Mr. Lynch argued is that it doesn't say, here's your periodic payment payment. It says, make your loan current. So it's super confusing in that to make a loan current is $70,000. You were right before when you said the periodic payment is normally like $1,000 or $500. In my definition, not his, have they ever foreclosed? Yes, because I've done several of these cases. So here's what really happens. Is that evidence in the record that they violated this by foreclosing on people making payments? So what happens is, there's no clear... Is there or isn't there? Well, it's difficult because they take money because the money's owed. But there's no specific separate agreement that says, if you make that payment, I won't foreclose. That's what the confusing problem is. If they'd sent a separate letter that says, we understand you're still in your home. We have the right to foreclose. I tell you what. If you make a payment of $1,000 a month for the next 20 years, we won't foreclose as long as you keep making that $1,000 payment. That's what Congress intended. And if that's what they did, that would be fine. What actually happens is, people receive these invoices and they pick up the phone and they say, I already filed bankruptcy. I would like to stay in my home. Can you help me? And they go, I tell you what. Why don't you make a couple payments and we'll see what we can do? That's the problem. Because people go ahead and they start making payments. Sorry, I'm sorry to interrupt you. That evidence is in the record? That evidence is not in the record because we're not to that case yet. But I've done four of these cases. And in the market, that's what... Well, why send these? If you're not... They're for informational purposes. Come on. Businesses don't do stuff for informational purposes. They do stuff to collect money. That's really what's going on here. And that's what happens. People get this. They're confused. They call and they say, I don't know if I can get you a refinance, but make a few payments and we'll see. And so even though the debt has been totally discharged, the people want to stay in their home, they make the payment and they try to do something. But there's no requirement that they stop the foreclosure. So they take them for three months and then they change their mind and foreclose anyway. They've collected $3,000 more on a discharged debt. If you want to collect money on a discharged debt, you can do it under very limited circumstances. Bank of America does this right now. They send a separate agreement and it says, we understand you're still in the home. We understand you filed for bankruptcy. We would like to make an offer to you. If you pay X dollars a month, we won't foreclose. You agree? Yes. Then the consumer has an agreement. It's clear what the periodic payment is. They understand what their circumstances will be and they can go forward with confidence. Otherwise, if you affirm this, then mortgage companies have the ability to completely ignore the discharge injunction, one of the fundamental principles of federal law. The trial court needs to be... If the suit would still go forward, it just wouldn't be applied, correct? Well, it would go forward individually. And what would happen is they would continue the practice across the board until each one at a time they would pay back a little bit of money and pay the little $1,000 ding and they wouldn't stop. A class action will stop the practice. Thank you. Thank you, Mr. Warwick. Mr. Lynch.